*********** *Page 2 
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award. ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings pursuant to the North Carolina Workers' Compensation Act.
2. The parties are correctly designated, and there is no question as to the mis-joinder or the non-joinder of any party.
3. On December 12, 2006, Plaintiff allegedly sustained an injury, at which time he worked as a delivery driver. Based upon the Form 22 provided by Defendant, Plaintiff's average weekly wage was $1,069.02, yielding a compensation rate of $712.72.
4. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings, and an employment relationship existed between the parties at all times relevant to these proceedings.
5. Defendant denies that Plaintiff sustained an injury by accident arising out of and in the course of his employment on December 12, 2006. Defendant set forth further defenses on their Form 33R and Form 61. *Page 3 
6. Plaintiff agrees to attend an independent medical evaluation by Dr. John Arthur Welshofer as arranged by a nurse case manager.
7. Plaintiff received short-term and long-term disability compensation following his injury in amounts that will be provided by Defendant and/or its servicing agent.
9. The parties stipulated to the following document being admitted into evidence as Stipulated Exhibit One — Pre-trial Agreement as modified and initialed by the parties.
10. The parties stipulated to the following documents being admitted into evidence as Stipulated Exhibit Two — Plaintiff's medical records.
11. The parties stipulated to the following document being admitted into evidence as Defendant's Exhibit One — Document entitled "Workers' Compensation Medical Status Questionnaire" filled out, signed, and dated by Dr. Albert James Osbahr, III on May 9, 2007.
12. By letter dated May 20, 2008, and pursuant to an Order at the hearing before the Deputy Commissioner, Defendant provided a copy of a document entitled "IFH Accident/Injury Report Warehouse and Drivers" filled out, signed, and dated by Plaintiff on December 12, 2006, which was marked as State's Exhibit One.
 *********** ISSUE
The issue to be determined is whether Plaintiff sustained a compensable work injury on December 12, 2006, and if so, to what workers' compensation benefits is he entitled?
 ***********
Based upon a preponderance of competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff is 42 years old, with a date of birth of March 22, 1969. Defendant employed Plaintiff as a delivery driver. Plaintiff's duties as a delivery driver included driving trucks of food items to Defendant's customers, unloading food items designated for the particular customer and delivering the food to its final destination.
2. On December 12, 2006, Plaintiff was making a delivery to a rest home, which was the fourth stop on his route. The delivery included frozen food items such as turkeys. The turkeys and other frozen food items in this particular delivery had shifted in-transit, causing pallets of food to fall onto each other and to become mixed up. As a result, Plaintiff had to separate the mixed up frozen food items and get them back into the order in which they needed to be delivered. Plaintiff then bent over and picked up a box of frozen turkeys weighing approximately 40 pounds that was part of his delivery for this location. As the Plaintiff stood up with the box and turned to the right, he felt a sharp pain in his lower back that went down his right leg causing him to go down to the floor in pain. It took about a minute before he was able to stand again. After the pain got better, Plaintiff completed his delivery. He told Mr. Kenny Johnson, a rest home employee, "I believe I just hurt my back." Plaintiff called Defendant and reported his back injury to the transportation department, but completed the rest of his deliveries for the day. Plaintiff had no pre-existing back problems.
3. When Plaintiff returned to Defendant's facility, he reported his injury to one of his supervisors, who recommended that he seek treatment from Dr. Albert James Osbahr, III, the Medical Director for Catawba Valley Medical Center. Defendant sent many of their injured workers to Dr. Osbahr for treatment. Dr. Osbahr is board certified in Occupational Medicine, Family Medicine, Preventive Medicine and Public Health, and Independent Medical Exams. *Page 5 
4. Plaintiff completed a document entitled "IFH Accident/Injury Report Warehouse and Drivers." Plaintiff described how his December 12, 2006 work injury occurred on page two of Defendant's accident/injury report in the following manner: "was picking up a case of turkeys [t]urned to go out on step. As turning felt pain in back and down leg." On page six of Defendant's accident/injury report, Plaintiff further noted that after he picked up a case of turkeys, he straightened himself up and turned "to go out of trailer [and] felt something pull in lower back and [I] went down on my knee's [sic] with a sharp pain in my back and top right leg." Plaintiff's report of injury is consistent with his at hearing testimony and the history of injury that he provided to medical providers.
5. The Full Commission finds as fact that on December 12, 2006, Plaintiff sustained an injury to his lower back arising out of and in the course of his employment, as a direct result of a specific traumatic incident of the work assigned to him by Defendant.
6. When Plaintiff left work on December 12, 2006, he presented to the emergency department at Catawba Valley Medical Center in Hickory, North Carolina with complaints of sharp pain in his lower back and down his right thigh/leg since lifting a box and twisting his back earlier in the day. His reported pain level was 8 on a pain scale of 0 to 10, with 10 being the highest level. The emergency department physician was Dr. Steven Williamson. A physical examination revealed discomfort of the right lower lumbar spinous muscles, increased pain with right lateral bending past 10 degrees, end-point pain with some relief of the pain with extension, and negative straight-leg raise testing bilaterally. Plaintiff received a diagnosis of lumbar strain and was directed to remain on light-duty work restrictions with no lifting greater than 15 pounds, and no prolonged bending, twisting, stooping, or squatting until the end of the week. *Page 6 
7. On December 15, 2006, Plaintiff presented to Dr. Osbahr for an evaluation of his low back pain from his injury on December 12, 2006. Dr. Osbahr noted that Plaintiff gave a history of having pain in his back and "in the right side" after his injury and that his pain had improved from "an 8 to 9 over 10 down to a 1 over 10." His notes also reflect that Plaintiff denied radiation down either of his legs, or bowel/bladder incontinence at the time. Plaintiff also reported that he had not been able to work within the restrictions given, but felt he could return to his usual activities. Following a physical examination in which Dr. Osbahr did not find spasms, tension, range of motion or strength problems with the back and lower extremities or signs of radiculopathy, he released Plaintiff to return to his regular work duties with a zero percent permanent partial disability rating. He advised Plaintiff to "be back smart with activities."
8. Plaintiff returned to work in approximately a week. Over the next several months he continued to perform his regular duties and did not miss any days from work as a result of his December 12, 2006 work injury. Plaintiff testified and the Full Commission finds as fact that after he returned to work his pain was not completely gone, but it was at a level within which he could work with the aid of the medication prescribed and taking extra strength Goody Powder. Plaintiff believed he had a pulled muscle as diagnosed by the doctors who treated him and that the problem would get better over time.
9. On April 10, 2007, Plaintiff presented to Mr. Phillip Andrew Killian, Dr. Osbahr's physician's assistant, with complaints of lower back pain radiating into the right leg and knee. He reported that he never got completely better from his December 2006 injury and that he had continued to have intermittent, nagging type pain in his right lower back. He further reported that he noticed some increased soreness on the past Friday (April 7, 2007) while *Page 7 
working for Defendant loading and unloading trucks, although he did not do anything out of the ordinary, and that he woke up the next morning with pain going down his right leg into his groin and was unable to get out of bed. Plaintiff reported his pain as 10 on a pain scale of 0 to 10, with 10 being the highest level.
10. Mr. Killian further noted that Plaintiff ambulated slowly, had a wide gait, and had stiff upper body posture. A lumbar x-ray revealed a facet abnormality at the L5-S1 level of the spine. Mr. Killian gave Plaintiff an injection of Toradol, which provided some relief, and restricted him to light-duty work, including no lifting, pushing, or pulling greater than 10 pounds, no prolonged bending, twisting, turning, stooping, or squatting, and no driving.
11. On April 17, 2007, Plaintiff again presented to Mr. Killian and reported that his lower back pain was better, but that he still had sharp pain shooting down his right leg and below the knee which occurred with prolonged walking or sitting and when attempting to stoop. He reported his pain score as 5 out of 10. Mr. Killian noted that Plaintiff "has had this lower back pain injury that has been aggravating him since back in December of 2006 which seemed to improve but then has exacerbated recently." A physical examination revealed a positive straight-leg raise test on the right. Mr. Killian ordered a lumbar MRI, prescribed Vicodin and continued Plaintiff's work restrictions.
12. On May 1, 2007, Plaintiff returned to Mr. Killian, who again referenced Plaintiff's December 12, 2006 work injury and noted that "[t]his seemed to improve some but then exacerbated recently." Plaintiff reported that the medications prescribed by Mr. Killian helped the lower back pain some, but not the pain shooting into his right leg. Mr. Killian kept Plaintiff's light-duty work restrictions the same with the exception of changing the weight restriction to 15 pounds and adding, no prolonged standing/walking and to alternate heat and ice *Page 8 
to the back. He prescribed Prednisone, Vicodin and Soma and assessed Plaintiff with "acute lumbar back pain, now with right leg radiation and radiculopathy."
13. On May 7, 2007, Plaintiff saw Dr. Osbahr who noted that Plaintiff had been doing fine since his December 2006 injury with minimal soreness which he tried to treat with Motrin over a period of four months. Dr. Osbahr further noted that in early April while Plaintiff was performing his usual loading and unloading activities at work, he felt a little soreness and the usual discomfort, but the next morning he had severe pain and could not get out of bed. Dr. Osbahr was of the opinion that plaintiff had acute lower back pain with radiculopathy in the right leg that was different from his December 12, 2006 work injury. Dr. Osbahr felt that Plaintiff could drive, but could not load or unload anything, and changed Plaintiff's light-duty work restrictions to no lifting, pushing, or pulling greater than 10 pounds, no bending, twisting, or turning, and no prolonged stooping, squatting, standing, or walking. He did not take Plaintiff out of work. Defendant still had not authorized the previously ordered MRI.
14. On May 9, 2007, Dr. Osbahr filled out a "Workers' Compensation Medical Status Questionnaire" form sent to him by Defendant, stating that Plaintiff's December 12, 2006 work injury had no relationship to his current lower back condition. He further stated, "his current low back pain with radiculopathy beginning to exacerbate in early April was no workplace event or recent exacerbation." At the time of completion of the questionnaire, Dr. Osbahr did not have MRI results. Dr. Osbahr maintained the same opinion at his deposition, testifying that the December 2006 symptoms resolved and that Plaintiff's April 2007 development of pain and radiculopathy was a separate occurrence.
15. Upon receipt of Dr. Osbahr's responses to the "Workers' Compensation Medical Status Questionnaire" form, Defendant denied liability for Plaintiff's medical condition and *Page 9 
treatment following April 7, 2007. Plaintiff continued to work performing light duty tasks as assigned such as filing papers, maintaining safety records and performing other tasks assigned by Mr. Michael Estep, the loss prevention and safety manager for Defendant-Employer, Institution Food House. Plaintiff worked until he was approved for short term disability during late June or early July 2007.
16. On May 31, 2007 and June 15, 2007, Plaintiff presented to Dr. Don Leo Hoover, a family medicine specialist, with continued complaints of lower back pain radiating down the right leg with some numbness and tingling. Dr. Hoover diagnosed Plaintiff with sciatica, continued his restrictions and referred him to Dr. Richard W. Adams.
17. Upon referral of Dr. Hoover and his physician's assistant, Mr. Lutz, on June 1, 2007, Plaintiff presented to Dr. Adams, a board certified orthopedic surgeon. Plaintiff's physical findings on examination were indicative of a herniated disc. Dr. Adams ordered an MRI.
18. On June 22, 2007, Plaintiff returned to Dr. Adams. He noted that Plaintiff's MRI revealed "an extruded herniated disk at the L4-5 level that has migrated cephalad to the midsection of the body of T4 . . . moderate pre-foraminal stenosis and severe foraminal stenosis on the right with probable nerve root impingement." Dr. Adams prescribed medication for Plaintiff's pain, indicated that surgery was likely and advised him to rest.
19. On July 27, 2007, Dr. Adams determined that Plaintiff was improving, but he was still having pain. He felt conservative management was the proper course at the time, and was hopeful that Plaintiff could get by without surgery.
20. On August 31, 2007, October 19, 2007 and December 19, 2007, Dr. Adams continued to recommend conservative treatment and noted some improvement in Plaintiff's condition, but Plaintiff was still having a significant amount of pain. Dr. Adams testified that at *Page 10 
the October visit he continued to keep Plaintiff out of work for another seven to eight weeks. In December 2007 he gave Plaintiff an injection and started him on a home therapy exercise program.
21. On February 20, 2008 and April 22, 2008, Dr. Adams noted that Plaintiff's lower back condition was steadily improving, but Plaintiff still had pain radiating into his right leg when performing any strenuous activity. On April 22, 2008, Dr. Adams kept Plaintiff out of work for another eight weeks until his next appointment.
22. At his June 24, 2008 appointment with Dr. Adams, Plaintiff continued to have low back pain radiating into the back of his right hip. Plaintiff informed Dr. Adams that he was bending over and started to get up and had some recurrence of pain down his back and into his hip. Based upon Plaintiff's previous improvement in neurological symptoms, Dr. Adams still did not recommend surgery at this visit. He decided to wait and re-evaluate Plaintiff at the next visit to determine if surgery would be recommended.
23. As of his July 21, 2008 deposition, Dr. Adams was of the opinion that if Plaintiff's lower back condition did not improve, then another lumbar MRI should be obtained, and if the results of the MRI indicated more herniated discs or no improvement of the herniated disc at the L4-L5 level of the spine, then Plaintiff should "probably" have surgery. He did not feel Plaintiff should go back to heavy lifting type work when he does return to work.
24. The primary issue to be resolved is whether the symptoms and conditions for which Plaintiff sought treatment in April 2007 and thereafter, are related to his December 12, 2006 workplace injury. *Page 11 
25. Dr. Osbahr opined that Plaintiff's December 12, 2006 work injury had no relationship to the lower back complaints he had in April 2007 and that Plaintiff's condition in April 2007 and thereafter was not the result of any workplace event or recent exacerbation.
26. Dr. Adams was of the opinion that the strain on Plaintiff's back from the work injury on December 12, 2006 was the problem that resulted in Plaintiff's disc herniation at L4-L5. In rendering his opinion, Dr. Adams considered that Plaintiff had some pre-existing degenerative changes in his discs, but he still felt that "with stress and strain and pressure on it, the disc can herniate. And his [Plaintiff's] did." Dr. Adams opined that many times a disc injury will be in the midline and the disc will bulge and begin to protrude out and then finally more disc behind it will be forced out, and it will then extend out to where it hits the nerve. He further opined that a disc herniation is a gradual, ongoing thing and the first pain Plaintiff had may have been the first stage and then in April he may have had a further progression of the problem. Based upon his experience in treating patients with back pain initially diagnosed as back strain, which progressed over time to a herniated disc, he was of the opinion that in December 2006 Plaintiff probably had enough injury to precipitate the starting of his disc herniation. Dr. Adams also opined that the back condition for which he treated Plaintiff beginning in June 2007 was at the same level of Plaintiff's back that was involved in the December 2006 injury and symptoms.
27. On cross examination, Defendant's counsel presented the following information for Dr. Adams to assume in rendering an opinion: Plaintiff saw Dr. Osbahr shortly after his December 2006 injury; Plaintiff improved after the injury; Plaintiff returned to work and did not seek medical treatment until April 2007; Plaintiff was working in April 2007 and felt some pain in his back; Plaintiff went home and the next morning he had excruciating pain going down his right leg when getting up; Dr. Osbahr was of the opinion that Plaintiff did not have radicular pain when he saw Plaintiff in December 2006; Dr. Osbahr opined that Plaintiff developed radicular pain for the first time in April 2007 and that Dr. Osbahr was of the opinion that Plaintiff's development of radicular pain *Page 12 
was related to the April 2007 incident. Defendant's counsel then asked Dr. Adams whether he could as a physician dispute the information presented to him. Dr. Adams stated, "I think we're dealing with a whole — I think we're dealing with a whole process. He had — a herniated disc doesn't always just occur just like that — bingo. It can be a gradual squeezing out of disc material." Although Dr. Adams further acknowledged that he did not think anyone could be sure, without the benefit of an MRI or some testing in December [2006], he still opined, that Plaintiff probably had enough disc injury from the December 2006 incident to start the disc herniation process. The Full Commission gives greater weight to the opinion of Dr. Adams on this issue over any contrary opinions of Dr. Osbahr. Dr. Adams is a board certified orthopedic surgeon with extensive experience in the treatment of conditions of the spine, including herniated discs, and he has treated Plaintiff over a longer period of time than Dr. Osbahr.
28. Based upon a preponderance of the competent and credible evidence from the entire record before the Industrial Commission, the Full Commission finds as fact that Plaintiff sustained a compensable injury on December 12, 2006 resulting in a disc injury, which caused sharp pain in his lower back that went down his right leg for which he sought medical treatment in December 2006, that after he returned to work in approximately a week he continued to have intermittent, nagging type pain in his right lower back, and that his disc injury progressed to a disc herniation at L4-L5, causing a flare-up of severe pain in April 2007and continuing.
29. The Full Commission further finds as fact that the medical treatment Plaintiff received in April 2007 and thereafter from Dr. Adams and Catawba Valley Medical Center for *Page 13 
his lumbar spine condition was causally related to his December 12, 2006 injury and was reasonably required to effect a cure, provide relief and/or lessen his disability. Defendant is obligated to pay for such treatment.
30. As of the date of Dr. Adams' deposition testimony, Plaintiff had not reached maximum medical improvement. Plaintiff needs continuing medical treatment for his compensable condition.
31. Dr. Adams should be designated as Plaintiff's authorized treating physician.
32. After his return to work on December 15, 2006 Plaintiff worked until June or July 2007 when he went out of work on short term disability. From April 10, 2007 until he went out of work, Plaintiff was restricted to light-duty work, including no lifting, pushing, or pulling greater than 10-15 pounds, no prolonged bending, twisting, turning, stooping, or squatting and for a short period he was restricted from driving. The light duty work Plaintiff was assigned after April 10, 2007 was designed to accommodate his restrictions and was more of a character of make-work. Although it is unclear from the record when Plaintiff was medically removed from work, the June 22, 2007 medical note of Dr. Adams advised Plaintiff to rest, the October 19, 2007 medical note from Dr. Adams "continued" to keep Plaintiff out of work, and through various medical notes Dr. Adams took Plaintiff out of work from appointment to appointment through the date of his deposition on July 21, 2008. It does not appear from the record that Dr. Adams had released Plaintiff to return to work as of July 21, 2008.
33. The Full Commission finds as fact that due to Plaintiff's medical condition which may require surgery, his physical limitations and his work restrictions resulting from his workplace injury and his past work history and vocational skills, it would have been futile for Plaintiff to seek employment since the date he left work. Based upon a preponderance of the *Page 14 
evidence from the entire record, the Full Commission finds that Plaintiff has proven that as a result of his December 12, 2006 injury, he has been totally unable to work from at least June 22, 2007 through the date of the deposition of Dr. Adams and continuing. The light duty work Plaintiff performed before he went out of work on short term disability was not indicative of his wage earning capacity; however, Defendant is entitled to a credit for his salary continuation.
34. Defendant is entitled to a credit for long term disability paid to Plaintiff through Defendant's employer-funded policy. The issue of a credit for short term disability is reserved as the record does not appear to address who paid the disability premiums.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 12, 2006, Plaintiff sustained a compensable injury by accident and/or specific traumatic incident to his lower back, arising out of and in the course of his employment as a direct result of a specific traumatic incident of the work assigned to him by Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. Based upon a preponderance of the competent and credible evidence from the entire record, Plaintiff has proven that his compensable injury of December 12, 2006 resulted in a disc injury, which progressed to a disc herniation, causing a severe flare-up of back pain and related conditions in April 2007 and thereafter. Plaintiff's back condition, for which he sought medical treatment in April 2007 and thereafter, flowed directly from and was causally related to his compensable December 12, 2006 back injury. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000). *Page 15 
3. The medical treatment Plaintiff received in December 2006 and in April 2007 and thereafter, from Dr. Adams and Catawba Valley Medical Center for his lumbar spine condition was causally related to his December 12, 2006 injury and was reasonably required to effect a cure, provide relief and/or lessen his disability. Defendant is obligated to pay for such treatment. Defendant is also obligated to pay all future medical treatment reasonably related to Plaintiff's compensable injury. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1.
4. Based upon a preponderance of the evidence from the entire record, Plaintiff has proven, that as a result of his December 12, 2006 workplace injury he has been totally incapable of working in an employment since at least June 22, 2007. Although it is unclear from the record when Plaintiff was medically removed from work, the Full Commission concludes based upon the June 22, 2007 medical note of Dr. Adams advising Plaintiff to rest, the October 19, 2007 medical note from Dr. Adams which "continued" to keep Plaintiff out of work, and the various medical notes wherein Dr. Adams took Plaintiff out of work from appointment to appointment through the date of his deposition on July 21, 2008, that Plaintiff has proven that he has been medically unable to work since at least June 22, 2007 as a result of his compensable injury. Plaintiff has further proven that due to his medical condition which may require surgery, his physical limitations and his work restrictions resulting from his injury and his past work history, it would have been futile for him to look for work since June 22, 2007, even if he was not been medically removed from work. Russell v. Lowes Prod. Distrib.,108 N.C.App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Plaintiff is not at maximum medical improvement with respect to his December 12, 2006 work injury and is in substantial need of future medical treatment. N.C. Gen. Stat. §§ 97-2(19),97-25, 97-25.1. *Page 16 
6. Dr. Adams is hereby designated as Plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25.
7. Defendant is entitled to a credit for long term disability paid to Plaintiff. The issue of whether Defendant is entitled to a credit for short term disability paid to Plaintiff is reserved as the record does not appear to address who paid the disability premiums. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to Plaintiff temporary total disability compensation at the rate of $712.72 per week for the days he was out of work as a result of his injury in December 2006, and from June 22, 2007 through the date of Dr. Adams' deposition and continuing, until he returns to work or until further order of the Industrial Commission.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's December 12, 2006 work injury, including any future medical treatment recommended by Dr. Adams, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. Dr. Adams is hereby designated as Plaintiff's authorized treating physician.
4. Plaintiff counsel is awarded an attorney's fee of 25% of the accrued compensation due Plaintiff herein and thereafter every fourth compensation check.
5. Defendant shall pay the costs of these proceedings. *Page 17 
This the ___ day of September 2011.
 S/_____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________________ DANNY LEE McDONALD COMMISSIONER
 S/_____________________ STACI T. MEYER COMMISSIONER *Page 1